IN THE MATTER OF THE PETITION OF THE NEW YORK CABLE RAILWAY COMPANY.

*Surface railways in streets — how the refusal of the property owners to consent thereto must be shown — 1875, chap. 606, sec. 4.*

Upon an application, made under chapter 606 of 1875, for an order appointing commissioners to ascertain and report as to whether or not a railway should be constructed upon certain streets in the city of New York, the fact that the consent of the requisite number of property owners could not be obtained was attempted to be shown by the affidavit of one Hughes. He stated in his affidavit that he had been employed by the company to ask for and obtain the consent of the owners of the property bounded on those portions of the streets

---

\* See note on page 353, for decision on resubmission.

and avenues upon which it was proposed to construct and operate the railway; that the aggregate of the valuations of the property bounded on those portions of the streets and avenues upon which it was proposed to construct the railway was $30,120,125, of which aggregate, property owners representing the sum of $29,837,375 decline to consent to the construction of said railways through the streets or avenues upon which their property was respectively situated, or such consents could not be obtained by reason of the absence of said owners from the city of New York; that application for such consents was made diligently and in good faith.

*Held,* that the affidavit was defective in that it failed to state any facts which proved that the consent of the property owners could not be obtained.

*Broadway Underground Railway Company* (23 Hun, 693) followed.

MOTION on behalf of Christiana M. J. McEnroe and others to vacate and set aside an order appointing commissioners to ascertain and report whether a railway should be constructed upon certain streets in the city of New York.

*James A. Deering,* for.the motion.

*Charles P. Shaw,* opposed.

DANIELS, J.:

The company proposing to construct the railways has been organized under chapter 606 of the Laws of 1875, and a variety of objections have been presented to the legality of its organization, and upon these objections the applicants as owners of property fronting on the boulevard have applied to have the order vacated appointing commissioners to report, after a hearing of all parties interested, whether the railways ought to be constructed or operated. This appointment under section four of the act can only be made when it shall be established, as a matter of fact, that the consent of the owners of one-half in value of the property bounded on that portion of the street upon which it is proposed to construct and operate the railway cannot be obtained, and the only manner in which that fact can regularly be established is by proof furnished to the court in support of the application for the appointment of the commissioners. In compliance with this requirement affidavits were presented on behalf of the company, upon which it was claimed that the fact was established that the consent of such owners could not be obtained. The affidavit so presented for this part of the road is shown in behalf of these applicants to have been in the following form:

" W. J. Hughes, being duly sworn, says : That he is over twenty-one years of age, and was employed since June 19, 1884, by the New York Cable Railway Company to ask for and obtain the consent of the owners of the property bounded on those portions of the streets and avenues upon which it is proposed to construct and operate the railways of said company on route No. two, as set forth and described in schedule one," hereto annexed.

That the aggregate of the valuations of the property bounded on those portions of the streets and avenues upon which it is proposed to construct and operate said railways upon said route number two, according to the assessment of said property for the purposes of taxation in the year 1883, is $30,120,125, of which aggregate, property owners representing, according to said assessment, the sum of $29,837,375, decline to consent to the construction of said railways through the streets or avenues upon which their property was respectively situated, or such consents could not be obtained by reason of the absence of said owners from the city of New York. That application for such consents was made diligently and in good faith.

But this affidavit contains no statement whatever that any effort had been made at any time to obtain the consent of the persons owning property fronting upon that part of this street, over which it is proposed to construct and operate a railway. But the general statement has been inserted in the affidavit that the owners decline to consent, or that such consents could not be obtained, by reason of their absence, and that application therefor had been made diligently and in good faith. What was done to obtain the consent of any one of the owners of property fronting upon the street is not disclosed, or in any manner set forth, but all that the affidavit contains is general conclusions drawn by the person making it from actual or supposed facts not in any way stated or mentioned. This affidavit consequently shows no compliance with the requirements of the statute, for that clearly contemplates that some application shall be made to the owners of the property fronting upon the street, for their consent, before the court will be authorized to appoint the commissioners. And the affidavit wholly fails to prove that any person has been applied to for the purpose of obtaining the requisite consent. In that respect it was substantially as

defective as the affidavits which were held to be insufficient in *Matter of Broadway Underground Railway Company* (23 Hun, 693).

Beyond this the proceedings for the organization of the company also seem to be defective, in failing to provide a definite plan, or plans, for the construction of the railways. That has been left, to a large extent, for the company itself to determine, and under that it may select particular locations for a surface railway, and others for an elevated railway. Neither has been designated nor prescribed with any reasonable degree of precision by the commissioners required to adopt or devise a plan for the construction of the railway under the provisions of the statute.

Upon these grounds the applicants are entitled to have so much of the order made for the appointment of commissioners as includes the boulevard vacated and set aside, and an order to that effect should be entered.

DAVIS, P. J.:

I concur on the first ground considered by my brother DANIELS. A similar question was raised in relation to the first application to this court of the Broadway Surface Railroad Company, and the court held in substance that such a general statement was not a compliance with the requirements of the statute. The court must have facts before it, and not the mere conclusions of interested parties or their employees. If this question had been raised on the application, or had the attention of the court been called to the form, the applicant would have been required to present proper proofs of the requisite facts.

BRADY, J., concurred.

Order appointing commissioners, so far as it includes the boulevard, vacated and set aside.